**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| BANGLADESH BANK<br><br>                Plaintiff,<br><br>      v.<br><br>RIZAL COMMERCIAL BANKING CORPORATION, MARIA SANTOS DEGUITO, ANGELA RUTH TORRES, LORENZO V. TAN, RAUL VICTOR B. TAN, ISMAEL S. REYES, BRIGITTE R. CAPIÑA, NESTOR O. PINEDA, ROMUALDO S. AGARRADO, PHILREM SERVICE CORP., SALUD BAUTISTA, MICHAEL BAUTISTA, CENTURYTEX TRADING, WILLIAM SO GO, BLOOMBERRY RESORTS AND HOTELS, INC. D/B/A SOLAIRE RESORT & CASINO, EASTERN HAWAII LEISURE COMPANY, LTD. D/B/A MIDAS HOTEL & CASINO, KAM SIN WONG A/K/A KIM WONG, WEIKANG XU, DING ZHIZE, GAO SHUHUA, and JOHN DOES 1-25,<br><br>                Defendants. | No. 19-cv-00983 (LGS)<br><br>ECF Case<br><br>**ORAL ARGUMENT REQUESTED** |

<u>**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' JOINT MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION**</u>

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ................................................................ 1

RELEVANT FACTUAL BACKGROUND................................................ 2

    A.    The Parties ............................................................................ 2

    B.    The North Korean Hackers ................................................... 3

    C.    The Alleged Theft of Plaintiff's Funds From the New York Fed ........... 4

    D.    Plaintiff's Claims Against Defendants................................... 5

LEGAL STANDARD.............................................................................. 5

ARGUMENT .......................................................................................... 8

    I.    PLAINTIFF FAILS TO MINIMALLY PLEAD A RICO CLAIM....................... 8

        A.    Plaintiff Fails to Plead a Pattern of Racketeering Activity ........................ 8

            1.    Plaintiff Fails to Allege a Closed-Ended Pattern Occurring Over Two Years ........................................... 9

            2.    Plaintiff Alleges a Single Theft Affecting a Single Victim and Single Piece of Property, Which Is Insufficient to Plead a Pattern Under RICO .................. 13

            3.    The Complaint Does Not Allege Open-Ended Continuity .......... 14

            4.    Plaintiff Has Failed to Allege Two Predicate Acts By Each Defendant ................................................. 15

    II.    PLAINTIFF'S RICO ENTERPRISE ALLEGATIONS ARE INSUFFICIENT........................................... 17

        A.    Plaintiff Fails to Plausibly Plead the Existence of an Association-In-Fact Enterprise ........................... 17

        B.    Defendants Did Not Participate in the Enterprise's Management or Operation.................................. 19

    III.    PLAINTIFF FAILS TO ALLEGE A RICO CONSPIRACY CLAIM UNDER SECTION 1962(D) ....................... 21

        A.    Plaintiff Fails to Allege a Substantive Violation Under RICO ................ 21

        B.      Plaintiff's Conclusory Allegations of Conspiracy Are Insufficient.......... 22

IV.    THE COURT SHOULD DECLINE TO EXERCISE SUPPLEMENTAL
       JURISDICTION OVER PLAINTIFF'S STATE LAW CLAIMS ....................... 23

CONCLUSION…………………………………………………………………………..24

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Albunio v. Int'l Safety Grp.*,
No. 15 Civ. 152, 2016 WL 1267795 (S.D.N.Y. Mar. 30, 2016) ...............................................9

*Aliev v. Bourkhov*,
No. 15 Civ. 6113, 2016 WL 3746562 (E.D.N.Y. July 8, 2016) ............................................14

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .................................................................................................................6

*Aviles v. S&P Glob., Inc.*,
No. 17 Civ. 2987 (JPO), 2019 WL 1407473 (S.D.N.Y. Mar. 28, 2019) ...........................8, 13

*Boneta v. Rolex Watch USA, Inc.*,
232 F. Supp. 3d 354 (S.D.N.Y. 2017) ..........................................................................7, 17, 22

*Butcher v. Wendt*,
No. 17 Civ. 7988, 2018 WL 6725308 (S.D.N.Y. Dec. 21, 2018) ............................................6

*Carlson v. Principal Fin. Grp.*,
320 F.3d 301 (2d Cir. 2003) .....................................................................................................5

*Casio Comp. Co. Ltd. v. Sayo*,
No. 98 Civ. 3772 (WK), 2000 WL 1877516 (S.D.N.Y. Oct. 13, 2000) ..................................6

*Chris H. v. New York*,
No. 17 Civ. 2902 (RA), 2017 WL 6514690 (S.D.N.Y. Dec. 18, 2017) ...................................6

*City of Almaty v. Ablyazov*,
226 F. Supp. 3d 272 (S.D.N.Y. 2016) ...................................................................................16

*Cofacredit, S.A. v. Windsor Plumbing Supply Co.*,
187 F.3d 229 (2d Cir. 1999) .........................................................................................8, 9, 10, 14

*Conte v. Newsday, Inc.*,
703 F. Supp. 2d 126 (E.D.N.Y. 2010) ..................................................................................20

*Cruz v. FXDirectDealer, LLC*,
720 F.3d 115 (2d Cir. 2013) ..................................................................................................17

*D. Penguin Bros. Ltd. v. City Nat. Bank*,
587 F. App'x 663 (2d Cir. 2014) .....................................................................................17, 21

*Dep't of Econ. Dev. v. Arthur Andersen Co. (U.S.A.),*
 924 F. Supp. 449 (S.D.N.Y. 1996) ...............................................................20

*Dubai Islamic Bank v. Citibank, N.A.,*
 256 F. Supp. 2d 158 (S.D.N.Y. 2003).....................................................19, 20, 21

*First Capital Asset Mgmt. v. Satinwood, Inc.,*
 385 F.3d 159 (2d Cir. 2004)............................................................13, 17, 18, 19

*In re Gen. Motors LLC Ignition Switch Litig.,*
 14-MD-2543 (JMF), 2016 WL 3920353 (S.D.N.Y. July 15, 2016) ........................8

*GICC Capital Corp. v. Tech. Fin. Grp.,*
 67 F.3d 463 (2d Cir. 1995)..........................................................................11, 14

*Estate of Gottdiener v. Sater,*
 35 F. Supp. 3d 386 (S.D.N.Y. 2014)..........................................7, 8, 15, 16, 21

*Gross v. Waywell,*
 628 F. Supp. 2d 475 (S.D.N.Y. 2009).............................................................13

*Hitachi Data Sys. Credit Corp. v. Precision Discovery, Inc.,*
 331 F. Supp. 3d 130 (S.D.N.Y. 2018)...............................................................9

*Int'l Data Bank, Ltd. v. Zepkin,*
 812 F.2d 149 (4th Cir. 1987) ........................................................................14

*Kolari v. N.Y. Presbyterian Hosp.,*
 455 F.3d 118 (2d Cir. 2006)....................................................................23, 24

*Laverpool v. N.Y.C. Transit Auth.,*
 760 F. Supp. 1046 (E.D.N.Y. 1991) ...............................................................22

*Lesavoy v. Lane,*
 304 F. Supp. 2d 520 (S.D.N.Y. 2004), *aff'd in relevant part sub nom. Lesavoy
 v. Gattullo–Wilson,* 170 F. App'x 721 (2d Cir. 2006) .............................................7

*Mackin v. Auberger,*
 59 F. Supp. 3d 528 (W.D.N.Y. 2014) ..............................................................17

*Makarova v. United States,*
 201 F.3d 110 (2d Cir. 2000).......................................................................5, 6

*Makowski v. United Bhd. of Carpenters,*
 No. 08 Civ. 6150 (PAC), 2010 WL 3026510 (S.D.N.Y. Aug. 2, 2010)...................8

*MMA Consultants 1, Inc. v. Republic of Peru,*
 245 F. Supp. 3d 486 (S.D.N.Y. 2017).............................................................6

*Moy v. Terranova*,
 No. 87 Civ. 1578 (SJ), 1999 WL 118773 (E.D.N.Y. Mar. 2, 1999) .......................17

*N.Y. State Catholic Health Plan, Inc. v. Acad. O & P Assocs.*,
 312 F.R.D. 278 (E.D.N.Y. 2015) ................................................................16

*Nasik Breeding & Research Farm Ltd. v. Merck & Co.*,
 165 F. Supp. 2d 514 (S.D.N.Y. 2001) .........................................................22

*Purchase Real Estate Grp. v. Jones*,
 No. 05 Civ. 10859, 2010 WL 3377504 (S.D.N.Y. Aug. 24, 2010) ...........8, 9, 10, 13

*Rasmy v. Marriot Int'l, Inc.*,
 343 F. Supp. 3d 354 (S.D.N.Y. 2018) .........................................................23

*Ray Larsen Assocs. v. Nikko Am., Inc.*,
 No. 89 Civ. 2809 (BJS), 1996 WL 442799 (S.D.N.Y. Aug. 6, 1996) ....................12

*Redtail Leasing, Inc. v. Belleza*,
 No. 95 Civ. 5191 (JFK), 1997 WL 603496 (S.D.N.Y. Sept. 30, 1997) ...................20

*Reich v. Lopez*,
 858 F.3d 55 (2d Cir. 2017) .................................................................9, 12

*Reves v. Ernst & Young*,
 507 U.S. 170 (1993) .......................................................................19, 21

*Rosner v. Bank of China*,
 528 F. Supp. 2d 419 (S.D.N.Y. 2007) .........................................................20

*Sathianathan v. Smith Barney, Inc.*,
 No. 04 Civ. 7122 (FM), 2007 WL 576097 (S.D.N.Y. Feb. 21, 2007) ....................14

*Schlaifer Nance & Co. v. Estate of Warhol*,
 119 F.3d 91 (2d Cir. 1997) ....................................................................13

*Schmidt v. Fleet Bank*,
 No. 96 Civ. 5030 (AGS), 1998 WL 47827 (S.D.N.Y. Feb. 4, 1998) .....................17

*SKS Constructors v. Drinkwine*,
 458 F. Supp. 2d 68 (E.D.N.Y. 2006) ..........................................................11

*Spool v. World Child Int'l Adoption Agency*,
 520 F.3d 178 (2d Cir. 2008) ...........................................................9, 11, 14, 16

*In re Stock Exchs. Options Trading Antitrust Litig.*,
 317 F.3d 134 (2d Cir. 2003) ....................................................................6

*United States v. Park Jin Hyok,*
    No. 18-MJ-1479 (C.D. Cal. June 8, 2018) ............................................................ 3

*Watral v. Silvernails Farm LLC,*
    51 F. App'x 62 (2d Cir. 2002) ...................................................................... 12

*Weathers v. Millbrook Cent. Sch. Dist.,*
    486 F. Supp. 2d 273 (S.D.N.Y. 2007) ........................................................ 23

*Westchester Cty. Indep. Party v. Astorino,*
    137 F. Supp. 3d 586 (S.D.N.Y. 2015) .......................................................... 7

*Zohar CDO 20031 Ltd. v. Patriarch Partners LLC,*
    286 F. Supp. 3d 634 (S.D.N.Y. 2017) ............................................. 6, 23, 24

## STATUTES

18 U.S.C. § 1029 ........................................................................................... 15

18 U.S.C. § 1343 ........................................................................................... 15

18 U.S.C. § 1344 ........................................................................................... 15

18 U.S.C. § 1956 ..................................................................................... 15, 16

18 U.S.C. § 1957 ........................................................................................... 15

18 U.S.C. § 1961 ..................................................................................... 15, 17

18 U.S.C. § 1962(c) ............................................................................... passim

18 U.S.C. § 1962(d) .......................................................................... 7, 21, 22

18 U.S.C. § 1964 ............................................................................................. 7

18 U.S.C. § 2314 ..................................................................................... 15, 16

18 U.S.C. § 2315 ..................................................................................... 15, 16

28 U.S.C. § 1331 ............................................................................................. 5

28 U.S.C. § 1367 ....................................................................................... 5, 23

## LEGISLATIVE MATERIALS

S. Rep. No. 91-617 (1969) ............................................................................ 14

Bloomberry Resorts & Hotels Inc. ("Bloomberry") d/b/a Solaire Resort & Casino (the "Solaire Casino"), Rizal Commercial Banking Corp. ("RCBC"), Eastern Hawaii Leisure Company, Ltd. ("EHL") d/b/a Midas Hotel & Casino (the "Midas Casino"), and Kam Sin Wong (together with EHL, the "EHL Defendants" and together with Bloomberry and RCBC, the "Defendants") respectfully submit this memorandum of law in support of their joint motion to dismiss the Bangladesh Bank's ("Plaintiff" or "Bank") Complaint [Compl., ECF No. 1] for lack of subject matter jurisdiction. Because there is no subject matter jurisdiction here, the Complaint must be dismissed.

## PRELIMINARY STATEMENT

Plaintiff has attempted to transform this single alleged theft perpetrated by North Korean hackers (who are not even named in this lawsuit) into a racketeering conspiracy under the Federal Racketeer Influenced and Corrupt Organizations Act ("RICO") solely to obtain federal jurisdiction. But RICO only applies to long-term, criminal racketeering activity—not a single alleged theft—and given the potential for treble damages and a federal forum, RICO's pleading requirements are extensive and demanding. Plaintiff's RICO claim, which is implausible and without merit, cannot satisfy this burden.

In early February 2016, North Korean hackers, allegedly working at the behest of the North Korean government, stole money from Plaintiff's bank account at the New York Federal Reserve (the "New York Fed"). Putting aside the intrigue of North Koreans perpetrating a theft of Bangladeshi money from the New York Fed, the civil law implicated by this conduct is straightforward, and Plaintiff seeks relief here based almost entirely on common law claims. Given its heavy reliance on state law in seeking relief, Plaintiff initially (and mistakenly) asserted that the Court could exercise subject matter jurisdiction over this dispute based solely on

1

diversity.  It was only after learning that complete diversity was lacking that Plaintiff changed

course and staked its entire jurisdictional theory on its *seventh* claim for relief:  a strained RICO

claim under section 1962(c).

At bottom, Plaintiff's allegations amount to a single, short-lived theft, by North Korean

hackers, from a single bank account (*i.e.*, Plaintiff's account at the New York Fed) against a

single victim (*i.e.*, Plaintiff).  Courts in this Circuit have consistently held that these types of

allegations are insufficient to plead the long-term "pattern" of illicit racketeering activity that

RICO was intended to proscribe.  Moreover, Plaintiff fails to plead the existence of an

"enterprise" under RICO, which requires an association-in-fact separate and apart from the

alleged racketeering activity by each Defendant.[1]  There are no allegations that plausibly suggest

a separate enterprise between and among the North Korean hackers, RCBC, Bloomberry, and the

EHL Defendants.

Because Plaintiff has not, and cannot, allege a minimally plausible RICO claim against

Defendants, the Court should dispose of the Complaint now in order to avoid Plaintiff's efforts to

turn a garden variety common law proceeding arising out of a theft of funds into a federal action.

Without any federal claims, this Court should decline to exercise supplemental jurisdiction over

the remaining common law claims and dismiss the Complaint in its entirety.

<u>**RELEVANT FACTUAL BACKGROUND**</u>

**A.    The Parties**

Plaintiff is the central bank of Bangladesh, which held funds at the New York Fed as of

February 2016 that are now the subject of this dispute.  Defendant Bloomberry is a developer,

---

[1]    Plaintiff's recent attempt to add a RICO conspiracy claim should be rejected for the same reasons.
ECF. No. 129, at 6 n.2.  Failure to plead a substantive RICO violation—which Plaintiff cannot do here—is fatal
to the analysis.

operator, and license holder of the Solaire Casino in Manila, Philippines. Bloomberry is incorporated and maintains its principal place of business in the Philippines. Defendant RCBC is one of the largest banks in the Philippines, where it is headquartered and incorporated. Defendant EHL owns and operates the Midas Casino, located in Manila, Philippines. Defendant Kam Sin Wong is a Philippine national and owner of EHL.

The Complaint lists numerous additional defendants, including other Philippine businesses as well as named and unnamed individuals, who have either not yet been served or appeared in this proceeding. Of these defendants, only three are non-Filipino individuals. Plaintiff has taken no steps to serve such defendants.

### B.    The North Korean Hackers

Plaintiff alleges that a group of North Korean hackers infiltrated Plaintiff's computer systems in order to steal money from its account at the New York Fed and extract the funds from the United States. Compl. ¶ 2. According to Plaintiff, the North Korean hackers are also responsible for infiltrating other entities' computer systems. Relying heavily on a criminal complaint filed in the Central District of California against one such hacker, Plaintiff alleges that on November 21, 2014, a group of North Korean hackers broke into the computer systems at Sony Pictures Entertainment ("Sony"). Compl. ¶ 57; *see* Criminal Complaint ¶¶ 7, 60-71, *United States v. Park Jin Hyok*, No. 18-MJ-1479 (C.D. Cal. June 8, 2018) (the "NK Complaint" or "NK Compl."), ECF No. 1. The NK Complaint alleges that the North Korean hackers— "working on behalf of the government of the Democratic People's Republic of North Korea"— specifically targeted Sony, actors, personnel, and movie theaters associated with the film "The Interview," which "depicted a fictional Kim Jong-Un," North Korea's "supreme leader" and dictator. NK Compl. ¶¶ 6-7, 130. A group calling itself "GOP" or the "Guardians of Peace"

claimed responsibility for the hack, demanded monetary compensation and that Sony stop the release of "The Interview," and threatened to release private information if such demands were not met. *See* NK Compl. ¶¶ 64, 67, 69-70, 78-82.[2] No facts alleged by Plaintiff, nor contained in the 172-page NK Complaint, suggest Defendants were involved in the Sony heist.

### C. The Alleged Theft of Plaintiff's Funds From the New York Fed

On February 4 and 5, 2016—less than 15 months after the Sony heist—Plaintiff alleges that a group of North Korean hackers stole over $81 million from Plaintiff's New York Fed bank account by infiltrating its computer systems and sending 36 fraudulent payment instructions to the New York Fed through the SWIFT systems. Compl. ¶¶ 6, 123, 125. Of those payment instructions, four were executed, and routed from the New York Fed, through four correspondent bank accounts in the United States, and into the Philippines. *Id.* ¶ 127.

Despite the sophisticated hacking capabilities of and previously successful heists by the North Koreans, Plaintiff alleges that in this specific instance, the hackers "aligned with co-conspirators in the Philippines" to carry out the theft. *Id.* ¶ 3. According to Plaintiff, the alleged co-conspirators were numerous reputable Philippine businesses, including local and international banks, money remittance companies, and local casinos, as well as Philippine and Chinese nationals. After the North Korean hackers fraudulently transferred the funds into the Philippines, the money was allegedly laundered through RCBC bank accounts and other local banks and money remittance companies. *Id.* ¶ 4. Then, between February 5 and 11, 2016— during the peak Chinese New Year holiday gaming season—the illicit funds were allegedly taken or transferred to the Midas and Solaire Casinos, where they were exchanged for casino

---

[2]    The North Korean hackers also stole and disseminated confidential data through email and social media, including hyperlinks to copyrighted and unreleased Sony films. NK Compl. ¶¶ 76, 79.

chips and played.  *Id.* ¶¶ 234-240, 346.  Plaintiff alleges that EHL and Bloomberry allowed play of the allegedly illicit chips in their casinos until March 2 and March 10, 2016, respectively, at which time they ended play and confiscated such chips.  *Id.* ¶ 240, 279, 346.

### D. Plaintiff's Claims Against Defendants

The crux of Plaintiff's allegations against Defendants is that they engaged in a conspiracy or criminal enterprise with the North Koreans to steal funds from Plaintiff's bank account in New York.  *Id.* ¶¶ 1-2.  Plaintiff asserts nine causes of action in the Complaint, eight of which arise under state law.[3]  Plaintiff asserts a single federal claim arising under section 1962(c) of RICO.  Though the Complaint asserts jurisdiction on diversity grounds, Plaintiff now claims that the Court can exercise subject matter jurisdiction pursuant to federal question jurisdiction under 28 U.S.C. § 1331 and can exercise supplemental jurisdiction over the remaining eight state law claims under 28 U.S.C. § 1367.

## **LEGAL STANDARD**

Under Rule 12(b)(1), a district court should dismiss a case for lack of subject matter jurisdiction where it "lacks the statutory or constitutional power to adjudicate" the dispute.  *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).[4]  While courts have federal question jurisdiction over actions "arising under" federal law, such jurisdiction is sustained only if the alleged federal claim "is neither made solely for the purpose of obtaining jurisdiction nor wholly insubstantial and frivolous."  *Carlson v. Principal Fin. Grp.*, 320 F.3d 301, 306 (2d Cir. 2003).  Put differently, "[t]he inadequacy of a federal claim is ground for dismissal for

---

[3]  The state law claims include (i) conversion, theft, misappropriation; (ii) aiding and abetting conversion, theft, misappropriation; (iii) fraud; (iv) aiding and abetting fraud; (v) conspiracy to commit conversion and fraud; (vi) conspiracy to commit trespass against chattels; (vii) unjust enrichment; and (viii) money had and received.

[4]  Unless otherwise stated, internal quotation marks and citations omitted.

lack of subject-matter jurisdiction . . . only when the claim is so insubstantial, implausible, . . . or otherwise completely devoid of merit as not to involve a federal controversy." *In re Stock Exchs. Options Trading Antitrust Litig.*, 317 F.3d 134, 150 (2d Cir. 2003); *see also Casio Comp. Co. Ltd. v. Sayo*, No. 98 Civ. 3772 (WK), 2000 WL 1877516, at *9 (S.D.N.Y. Oct. 13, 2000) (Rule 12(b)(1) dismissal is "appropriate when a [] federal claim is not even minimally plausible.").[5]

Similarly, to survive a motion to dismiss under Rule 12(b)(6),[6] "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* A plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). Moreover, alleging facts that are merely "consistent with liability" is not enough. *Butcher v. Wendt*, No. 17 Civ. 7988, 2018 WL 6725308, at *4 (S.D.N.Y. Dec. 21, 2018). Instead, "the complaint must 'nudge[ ]' claims 'across the line from conceivable to plausible.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of

---

[5]   In resolving a Rule 12(b)(1) motion, "a district court is not confined to the complaint and may refer to evidence outside the pleadings," such as affidavits, exhibits, and declarations, *MMA Consultants 1, Inc. v. Republic of Peru*, 245 F. Supp. 3d 486, 497 (S.D.N.Y. 2017), and "must" consider such evidence where "resolution of a proffered factual issue may result in the dismissal of the complaint." *Id.* at 499. A plaintiff bears the burden of proving by a preponderance of evidence that jurisdiction exists over the matter. *Makarova*, 201 F.3d at 113.

[6]   Because the standards are similar and the practical result of dismissal is the same, Defendants seek herein dismissal of the Complaint under both Rule 12(b)(1) and Rule 12(b)(6). *See Zohar CDO 20031 Ltd. v. Patriarch Partners LLC*, 286 F. Supp. 3d 634, 652 (S.D.N.Y. 2017) (citing *Nowak v. Ironworkers Local 6 Pension Fund*, 81 F.3d 1182, 1190 (2d Cir. 1996) ("[J]urisdictional question (whether [Plaintiff's] claim 'arose under' [RICO]) and the question on the merits (whether [Plaintiff] stated a claim upon which relief could be granted) [are] inextricably bound together."); *Chris H. v. New York*, No. 17 Civ. 2902 (RA), 2017 WL 6514690, at *2 (S.D.N.Y. Dec. 18, 2017) ("The standards of review for a motion to dismiss under [Rule 12(b)(1) and Rule 12(b)(6)] are substantively identical.").

misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679.

The RICO statute grants standing to "[a]ny person injured in his business or property by reason of a violation of section 1962 . . . ." 18 U.S.C. § 1964(c).  To plead a violation of section 1962(c), a plaintiff must show that (i) a defendant (ii) through the commission of two or more predicate acts (iii) constituting a "pattern" (iv) of "racketeering activity" (v) conducted or participated in the conduct of the affairs (vi) of an "enterprise" (vii) the activities of which affected interstate or foreign commerce. *See Westchester Cty. Indep. Party v. Astorino*, 137 F. Supp. 3d 586, 600 (S.D.N.Y. 2015).  "The requirements of section 1962(c) must be established as to each individual defendant." *Boneta v. Rolex Watch USA, Inc.*, 232 F. Supp. 3d 354, 358 (S.D.N.Y. 2017).  Plaintiff did not plead, but now claims to assert, a conspiracy claim under section 1962(d), which provides that "[i]t shall be unlawful for any person to conspire to violate any of the [substantive RICO] provisions . . . ." 18 U.S.C. § 1962(d).

Because "RICO is a specialized statute requiring a particular configuration of elements," it "cannot be incorporated loosely from a previous narration, but must be tightly particularized and connected in a complaint." *Lesavoy v. Lane*, 304 F. Supp. 2d 520, 532 (S.D.N.Y. 2004), *aff'd in relevant part sub nom. Lesavoy v. Gattullo–Wilson*, 170 F. App'x 721 (2d Cir. 2006); *see also Estate of Gottdiener v. Sater*, 35 F. Supp. 3d 386, 393-94 (S.D.N.Y. 2014).  The mere assertion of a RICO claim has an "almost inevitable stigmatizing effect on those named as defendants," and "because the allure of treble damages . . . and federal jurisdiction presents a powerful incentive for plaintiffs," courts must "scrutinize civil RICO claims early in the litigation to separate the rare complaint that actually states a claim for civil RICO" from those

merely alleging common law claims. *In re Gen. Motors LLC Ignition Switch Litig.*, 14-MD-2543 (JMF), 2016 WL 3920353, at *11 (S.D.N.Y. July 15, 2016).

## ARGUMENT

## I.     PLAINTIFF FAILS TO MINIMALLY PLEAD A RICO CLAIM

Plaintiff argues that the Court has federal question jurisdiction because the Complaint states a civil RICO claim. Because Plaintiff's federal RICO claim is wholly insubstantial and not adequately pleaded, as detailed below, the Court should dismiss the Complaint in its entirety.

### A.     Plaintiff Fails to Plead a Pattern of Racketeering Activity

Plaintiff has not plausibly pleaded that the Defendants engaged in conduct constituting a "pattern" of racketeering activity under section 1962(c). To plead a pattern of racketeering activity, a plaintiff must allege at least two predicate acts of racketeering activity *by each defendant* that are related and continuous. *Estate of Gottdiener*, 35 F. Supp. 3d at 395; *Aviles v. S&P Glob., Inc.*, No. 17 Civ. 2987 (JPO), 2019 WL 1407473, at *19 (S.D.N.Y. Mar. 28, 2019) ("[T]wo [predicate] acts alone will not always suffice to form a [RICO] pattern."). The "focus of section 1962(c) is on ***the individual patterns of racketeering engaged in by a defendant, rather than the collective activities of the members of the enterprise.***" *Makowski v. United Bhd. of Carpenters*, No. 08 Civ. 6150 (PAC), 2010 WL 3026510, at *5 (S.D.N.Y. Aug. 2, 2010) (emphasis added).

To establish a "continuous" pattern under RICO requires pleading either "open-ended" or "closed-ended" continuity. *Cofacredit, S.A. v. Windsor Plumbing Supply Co.*, 187 F.3d 229, 242 (2d Cir. 1999). "Closed-ended continuity is demonstrated by predicate acts that amount to continued criminal activity, by a particular defendant." *Id.* Open-ended continuity is established where a plaintiff shows that the predicate acts "include a specific threat of repetition extending indefinitely into the future . . . ." *Purchase Real Estate Grp. v. Jones*, No. 05 Civ. 10859, 2010

WL 3377504, at *11 (S.D.N.Y. Aug. 24, 2010). Predicate acts also must be related to each other, which requires, among other things, that they have "the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." *Reich v. Lopez*, 858 F.3d 55, 61 (2d Cir. 2017).

Plaintiff has not alleged a plausible "pattern of racketeering" here. Plaintiff has not pleaded that the alleged predicate acts were continuous because (i) the acts did not occur over a substantial period of time, as required for closed-ended continuity, (ii) allegations of a single theft are insufficient to plead a RICO pattern, and (iii) the Complaint does not allege open-ended continuity exists. Plaintiff also fails to plead at least two predicate acts against each Defendant.

1.   *Plaintiff Fails to Allege a Closed-Ended Pattern Occurring Over Two Years*

Even assuming that Plaintiff has minimally pleaded racketeering activity by Defendants (*infra*, I.A.4), Plaintiff's allegations are insufficient to establish a RICO pattern based on closed-ended continuity. "Courts have pointed repeatedly to duration as the most important factor in determining whether a closed-ended RICO pattern exists." *Purchase Real Estate Grp.*, 2010 WL 3377504, at *9. To establish closed-ended continuity, a plaintiff must prove "a series of related predicates extending over a substantial period of time." *Cofacredit*, 187 F.3d at 242. It is well settled that "[p]redicate acts extending over a few weeks or months . . . do not satisfy this requirement." *Albunio v. Int'l Safety Grp.*, No. 15 Civ. 152, 2016 WL 1267795, at *7 (S.D.N.Y. Mar. 30, 2016). Instead, the Second Circuit "ha[s] never held a period of [racketeering activity spanning] less than two years to constitute a substantial period of time." *Spool v. World Child Int'l Adoption Agency*, 520 F.3d 178, 184 (2d Cir. 2008) (sixteen months insufficient to demonstrate closed-ended continuity); *Hitachi Data Sys. Credit Corp. v. Precision Discovery, Inc.*, 331 F. Supp. 3d 130, 146-47 (S.D.N.Y. 2018) ("time period of less than one

year" fails to satisfy closed-ended continuity); *Purchase Real Estate Grp.*, 2010 WL 3377504, at *9-10 (closed-ended continuity not met where alleged racketeering activity occurred for 23 months and 15 days).  And critically here—where Plaintiff has attempted to artificially enhance the duration of the alleged racketeering activity by pointing to an unrelated theft of information from Sony—the law is that "the duration of a pattern of racketeering activity is measured by the RICO predicate acts" that defendants are alleged to have committed. *Cofacredit*, 187 F.3d at 243.

As to each of the Defendants, Plaintiff alleges predicate acts relating solely to the theft of funds from Plaintiff's bank account at the New York Fed, which occurred almost exclusively in February and early March 2016—slightly over one month.  *See* Compl. ¶¶ 377-382.  This activity allegedly began on February 4, 2016, when the North Koreans infiltrated Plaintiff's network.  *Id.* ¶ 119.  Based on the Complaint's allegations, the predicate acts then ended on March 2 and 10, 2016, when EHL and Bloomberry stopped all play of the casino chips allegedly purchased with the stolen funds.  *See id.* ¶ 346.  Under these facts, the alleged racketeering activity occurred slightly over one month, which is substantially shorter than the two-year threshold to establish closed-ended continuity in the Second Circuit.

Despite Plaintiff's attempts to weave the story of a longer conspiracy, the Complaint still fails to allege racketeering activity occurring over a substantial period of time.  According to Plaintiff, the North Korean hackers first "gradually infiltrated" Plaintiff's network in March 2015.  *Id.* ¶ 116.  Similarly, as to RCBC, the Complaint alleges that five fictitious U.S. dollar accounts were opened in the Philippines on May 15, 2015.  *Id.* ¶¶ 66-67.  Even assuming (for the

sake of argument) this conduct is sufficient to allege predicate acts, the duration of racketeering activity would span from March 2015 to March 2016—at most, 13 months.[7]

In a weak attempt to expand the starting point of racketeering activity, Plaintiff alleges that "the enterprise" engaged in predicate acts "occur[ing] over a substantial period of time beginning with the North Korean hackers [sic] creation of the malware designed to gain access to [Plaintiff's] computer systems in 2014" (Plaintiff does not say when in 2014). Compl. ¶ 384. But Plaintiff's reliance on such conduct is improper. When determining closed-ended continuity, "[t]he relevant period . . . is the time during which ***RICO predicate activity*** occurred, not the time during which the underlying scheme operated or the underlying dispute took place." *Spool*, 520 F.3d at 184 (emphasis added). Where a plaintiff "does not allege any [predicate act] in connection with" an event or conduct, such act "cannot form the starting point of [a] pattern of racketeering activity" against a defendant. *GICC Capital Corp. v. Tech. Fin. Grp.*, 67 F.3d 463, 467 (2d Cir. 1995). Thus, the North Korean hackers' alleged creation of the software used later in time to infiltrate Plaintiff's systems is not relevant here. Because such conduct is not alleged as predicate activity, it cannot be used to expand the timeline during which the alleged RICO predicate activity occurred. In any event, the creation of the software by North Koreans at some unalleged point in time in 2014 does not take the conduct in question outside of the two-year period required by the Second Circuit.[8]

---

[7] Courts in this Circuit rarely have found closed-ended continuity for racketeering activity alleged to have lasted materially less than two years to be sufficient. Those cases are nonetheless distinguishable because they involved much broader schemes—not the single theft alleged here. *See SKS Constructors v. Drinkwine*, 458 F. Supp. 2d 68, 80 (E.D.N.Y. 2006) (finding closed-ended continuity over 17 months where complaint "refer[red] to a broader [ongoing] scheme to defraud homeowners" involving numerous victims).

[8] For similar reasons, Plaintiff's allegations regarding Defendants' after-the-fact conduct (*i.e.*, after the alleged theft and laundering of funds), including any alleged "refus[al] to assist the Bank, talk to authorities and/or [giving] false, inconsistent testimony," cannot be used to extend the endpoint of the alleged pattern of racketeering activity. Compl. ¶ 253. Alleged efforts "to cover up past conduct are inadequate to satisfy the

11

Nor can Plaintiff's references to the November 2014 Sony theft be used to satisfy closed-ended continuity. First, Plaintiff does not allege any predicate acts with respect to such theft. Therefore, it cannot be used as a starting point for the alleged racketeering activity in this dispute. Second, even assuming that the Sony theft constituted a predicate act (it did not), Plaintiff cannot establish that the Sony heist was related to the theft of Plaintiff's funds. Relatedness requires a showing that predicate acts "have the same or similar purposes, results, participants, victims, or methods of commission, . . . and are not isolated events." *Watral v. Silvernails Farm LLC*, 51 F. App'x 62, 64 (2d Cir. 2002). Here, the Sony theft and the Bank theft involved entirely different participants. Specifically, Plaintiff makes no allegations that the Defendants and others allegedly implicated in the Bank theft were in any way involved in the Sony theft. Nor were the victims, methods of commission, or purposes the same. Plaintiff is a foreign central bank whose system was hacked by North Koreans with the single purpose of sending fraudulent payment instructions and stealing money from its account in New York. By contrast, Sony is an entertainment business whose confidential data was stolen by North Koreans with the main goal (according to the NK Complaint relied upon by Plaintiff) of halting the release of a film that mocked the North Korean dictator. Because there is no evidence raising the plausible inference that the Sony heist and the Bank theft here were more than "isolated or sporadic criminal acts" by North Korean hackers, these acts are not related for purposes of RICO. *Reich v. Lopez*, 858 F.3d 55, 60 (2d Cir. 2017). And, in any event, the Sony theft occurred at most 17 months prior to the alleged predicate acts against Defendants when the North Korean's first infiltrated Sony's computers in September 2014. Compl. ¶ 56.

---

continuity requirement." *Ray Larsen Assocs. v. Nikko Am., Inc.*, No. 89 Civ. 2809 (BSJ), 1996 WL 442799, at *7 n.8 (S.D.N.Y. Aug. 6, 1996) (citing cases).

2. *Plaintiff Alleges a Single Theft Affecting a Single Victim and Single Piece of Property, Which Is Insufficient to Plead a Pattern Under RICO*

Even assuming that Plaintiff satisfied the two-year time period (it has not), courts in the Second Circuit take a holistic approach, weighing additional factors to determine whether closed-ended continuity exists, such as "the number and variety of predicate acts, the number of both participants and victims, and the presence of separate schemes." *First Capital Asset Mgmt. v. Satinwood, Inc.*, 385 F.3d 159, 181 (2d Cir. 2004) (The "mere fact that predicate acts span two years is insufficient, without more, to support a finding of a closed-ended pattern."). Where an alleged RICO claim involves "a limited number of . . . victims" or "a discrete scheme with a narrow purpose or a single property," it is insufficient to demonstrate closed-ended continuity. *Gross v. Waywell*, 628 F. Supp. 2d 475, 494 (S.D.N.Y. 2009).

The Second Circuit, and other courts in the Circuit, have consistently held that a single scheme against one victim (or even two) fails to adequately plead a pattern under RICO. *See First Capital Asset Mgmt.*, 385 F.3d at 182 (no pattern where plaintiffs "alleged that [defendant] engaged in a single scheme to defraud two creditors"); *Schlaifer Nance & Co. v. Estate of Warhol*, 119 F.3d 91, 97-98 (2d Cir. 1997); *Aviles*, 2019 WL 1407473, at *20. A court in this District recently affirmed this "single scheme" rule, finding that an alleged scheme to defraud a group of investors—occurring over four years—failed to establish closed-ended continuity because it "represent[ed] the efforts of a single group of actors to execute a one-time scheme against a single set of victims through a single means." *Aviles*, 2019 WL 1407473, at *20.

The Second Circuit also has "directed district courts to 'take care to ensure that . . . plaintiff is not artificially fragmenting a singular act into multiple acts simply to invoke RICO.'" *Purchase Real Estate Grp.*, 2010 WL 3377504, at *9 (quoting *Schlaifer*, 119 F.3d at 97-98). If "two or more 'acts' to perpetrate a single fraud were held to satisfy the RICO statute, then every

fraud would constitute 'a pattern of racketeering activity.'" *Int'l Data Bank, Ltd. v. Zepkin*, 812 F.2d 149, 154-55 (4th Cir. 1987). And where a plaintiff alleges a single-victim RICO claim, it also "must allege a pattern of separate economic injuries." *Sathianathan v. Smith Barney, Inc.*, No. 04 Civ. 7122 (DAB) (FM), 2007 WL 576097, at *3 (S.D.N.Y. Feb. 21, 2007) (citing cases).

The continuity factors weigh heavily against finding a pattern here. At bottom, Plaintiff's allegations amount to a single theft (by North Korean hackers) from a single bank account (Plaintiff's account at the New York Fed) against a single victim (Plaintiff). Plaintiff also does not allege any separate economic injury apart from the loss of $81 million from its New York Fed bank account. Under such circumstances, closed-ended continuity cannot be satisfied.

### 3. *The Complaint Does Not Allege Open-Ended Continuity*

Plaintiff does not allege open-ended continuity in the Complaint, nor can it. To establish open-ended continuity, a plaintiff must show "a threat of continuing criminal activity beyond the period during which the predicate acts were performed." *Cofacredit, S.A.*, 187 F.3d at 242. Where an enterprise involves a primarily "legitimate business," a plaintiff must show that "the predicate acts were the [defendant's] regular way of operating." *Aliev v. Bourkhov*, No. 15 Civ. 6113, 2016 WL 3746562, at *10 (E.D.N.Y. July 8, 2016). Courts also have rejected open-ended continuity involving a finite set of actions that are not likely to be repeated. *GICC Capital Corp.*, 67 F.3d at 466 (2d Cir. 1995) (no open-ended pattern where defendants' "scheme was inherently terminable"); *see also Spool*, 520 F.3d at 186 ("[A] serious, but discrete and relatively short-lived scheme to defraud a handful of victims . . . is insufficient to establish open-ended continuity."). As the legislative history makes clear, "the target of [RICO] is . . . not sporadic activity. The infiltration of legitimate business normally requires more than one 'racketeering activity' and the threat of continuing activity to be effective." S. Rep. No. 91-617, at 158 (1969). A plaintiff must provide evidence to satisfy this threshold. *Aliev*, 2016 WL 3746562, at *10.

14

Because Plaintiff has made no allegations, nor provided any evidence, of a threat of continued criminal activity involving the alleged theft of Plaintiff's funds or that any of the predicate acts were Defendants' "regular way of operating," open-ended continuity cannot be pleaded here.

### 4.     Plaintiff Has Failed to Allege Two Predicate Acts By Each Defendant

Plaintiff has not adequately pleaded at least two predicate acts to establish a pattern of racketeering activity by Defendants.  Section 1961(1) defines "racketeering activity" as "any act which is indictable" under various federal statutes as well as certain offenses under state law that are "punishable by imprisonment for more than one year."  18 U.S.C. § 1961(1).  A well-pleaded complaint "must allege *every essential element of each predicate act*."  *Estate of Gottdiener*, 35 F. Supp. 3d 386, 392 (S.D.N.Y. 2014) (emphasis added).  Plaintiff has not done so here.

Plaintiff attempts to allege a series of predicate acts (all of which arise from the alleged theft of Plaintiff's funds in February 2016) in paragraphs 377 to 383 of the Complaint.  But the Complaint merely provides a list of predicate acts supported by generalized, conclusory statements against "the enterprise,"[9] and, in some instances, against a subset of "Banking-Related Defendants" or "Casino-Related Defendants."  Compl. ¶ 382.  But the law requires Plaintiff to show violations of at least two predicate acts by each Defendant, and Plaintiff's failure to do so is insufficient to survive the close scrutiny demanded by RICO.

Plaintiff alleges only two predicate acts specifically against Defendants:  (i) money laundering pursuant to 18 U.S.C. § 1956-1957; and (ii) Transportation, Receipt, and Use of

---

[9]     Plaintiff alleges the following predicate acts generally against the enterprise:  (i) 18 U.S.C. § 1029 relating to the use and trafficking with intent to defraud in one or more access devices; (ii) 18 U.S.C. § 1343 relating to fraud by use of wire transmissions; (iii) 18 U.S.C. § 1344 relating to bank fraud; (iv) 18 U.S.C. §§ 1956-1957 arising out of the laundering of the Bank's funds from its account at the New York Fed; (v) 18 U.S.C. §§ 2314-2315 relating to the transportation, receipt, and use of the stolen proceeds into foreign commerce and out of the United States; and (vi) any state law predicate act such as theft, conversion, and robbery.  Compl. ¶ 377.

Stolen Proceeds into Foreign Commerce pursuant to 18 U.S.C. § 2314-2315.[10] Money

laundering fails as a predicate act against Defendants because Plaintiff cannot show that section

1956 (the money laundering provision) applies extraterritorially.[11] When alleging violations

under section 1956 against foreign parties—like Defendants here—Plaintiff must show that the

alleged conduct occurred in part within the United States. *See* 18 U.S.C. § 1956(d). However,

Plaintiff alleges that all money laundering conduct occurred in the Philippines—not the United

States. Compl. ¶¶ 63-64 (alleging funds were "transfer[red] out of the United States to [RCBC],

from which the stolen funds could be laundered" then sent to Solaire and Midas Casinos, "where

they would be laundered and then disappear").[12]

With respect to both offenses, Plaintiff also fails to allege which specific subsection of

each provision the Defendants are alleged to have violated. Compl. ¶¶ 381-382. Nor has

Plaintiff pleaded numerous essential elements required to establish violation under either statute,

including knowledge or intent.[13]

---

[10]  Any "state law predicate act," as alleged in paragraph 377(f) of the Complaint, must fail. None of Plaintiff's asserted state law causes of action constitute racketeering activity under section 1961(1), as courts in the Second Circuit have routinely held. *See* 18 U.S.C. § 1961(1)(A) (state law predicate acts include "any act or threat involving murder, kidnapping, gambling, arson, robbery, bribery, extortion, . . . which is . . . punishable by imprisonment for more than one year"); *see Spool*, 520 F.3d at 184 (2d Cir. 2008) ("Ordinary theft offenses and conspiracies to commit them are not among the predicate activities defined in 18 U.S.C. § 1961(1)."); *N.Y. State Catholic Health Plan, Inc. v. Acad. O & P Assocs.*, 312 F.R.D. 278, 296 (E.D.N.Y. 2015) (common law fraud does not "constitute racketeering activity for RICO purposes").

[11]  A plaintiff can properly plead a predicate act committed abroad only where the alleged act "violates a predicate statute that is itself extraterritorial." *City of Almaty v. Ablyazov*, 226 F. Supp. 3d 272, 278 (S.D.N.Y. 2016) (quoting *RJR Nabisco v. European Community*, 136 S. Ct. 2090, 2103 (2016)). Section 1962 thus "applies to foreign racketeering activity – but only to the extent that the predicates alleged in a particular case themselves apply extraterritorially." *City of Almaty*, 226 F. Supp. 3d at 278 (quoting *RJR Nabisco*, 136 S. Ct. at 2102-03).

[12]  *See id.* ¶ 100 (alleging money was moved "to the Philippines, from which the funds could then be laundered through casinos and questionable businesses"); *id.* ¶ 131 (funds were quickly moved to the Philippines, "so that [they] could be distributed and laundered before the theft was detected"); *id.* ¶ 132 ("[T]he hackers would . . . deliver the funds to RCBC [in the Philippines] *so they could be laundered*.") (emphasis added).

[13]  Plaintiff fails to allege that any of the Defendants committed the predicate acts sounding in fraud (*i.e.*, wire and bank fraud, and use and trafficking with intent to defraud in one or more access devices). To do so, Plaintiff must "state with particularity the circumstances constituting fraud" under Rule 9(b), which requires allegations of "the time, place, speaker and sometimes even the content of the alleged misrepresentation." *Estate of Gottdiener*, 35 F. Supp. 3d at 392. Plaintiff must also "plead those events which give rise to a strong inference

## II. PLAINTIFF'S RICO ENTERPRISE ALLEGATIONS ARE INSUFFICIENT

### A. Plaintiff Fails to Plausibly Plead the Existence of an Association-In-Fact Enterprise

Plaintiff's RICO claims also must fail because the Complaint implausibly alleges the existence of a RICO "enterprise." Under RICO, an enterprise is defined as a "group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). To establish an association-in-fact enterprise, a plaintiff must plead "three structural features: [1] a purpose, [2] relationships among those associated with the enterprise, and [3] longevity sufficient to permit these associates to pursue the enterprise's purpose." *D. Penguin Bros. Ltd. v. City Nat. Bank*, 587 F. App'x 663, 667 (2d Cir. 2014).

The enterprise must have "an ascertainable structure distinct from that inherent in a pattern of racketeering." *Mackin v. Auberger*, 59 F. Supp. 3d 528, 544 (W.D.N.Y. 2014). A plaintiff, therefore, must "detail any *course* of fraudulent or illegal conduct separate and distinct from the alleged predicate racketeering acts themselves." *First Capital Asset Mgmt., Inc.*, 385 F.3d at 174; *see also Cruz v. FXDirectDealer, LLC*, 720 F.3d 115, 121 (2d Cir. 2013) (dismissing RICO claim where alleged enterprise was not distinct). The fundamental question is whether an association-in-fact enterprise "would still exist were the predicate acts removed from the equation." *Mackin*, 59 F. Supp. 3d at 544.

"[C]onclusory 'naming of a string of entities' does not adequately allege an enterprise." *Moy v. Terranova*, No. 87 Civ. 1578 (SJ), 1999 WL 118773, at *5 (E.D.N.Y. Mar. 2, 1999)

---

that the defendant[ ] had an intent to defraud, knowledge of the falsity, or a reckless disregard for the truth." *Boneta*, 232 F. Supp. 3d at 359. Here, Plaintiff fails to allege the time, place, or how Defendants were involved in the alleged predicate acts. *See* Compl. ¶¶ 379-380. Nor has Plaintiff alleged facts supporting the inference that Defendants possessed the requisite fraudulent intent. Generalized motives, such as "earning fees on [fraudulent] transactions"— the crux of Plaintiff's allegations against RCBC, Bloomberry, and EHL—are insufficient to plead fraudulent intent. *Schmidt v. Fleet Bank*, No. 96 Civ. 5030 (AGS), 1998 WL 47827, at *6 (S.D.N.Y. Feb. 4, 1998).

(quoting *Richmond v. Nationwide Cassel, L.P.*, 52 F.3d 640, 646 (7th Cir. 1995)) (dismissing RICO claim with no factual allegations of "structure of the group or how the entities joined together"). Instead, the existence of an enterprise is "proven by evidence of an ongoing organization, formal or informal," *First Capital Asset Mgmt.*, 385 F.3d at 173, and by "solid information . . . from which [a court] could fairly conclude that its 'members functioned as a unit.'" *Id.* at 174-75 (quoting *United States v. Turkette*, 452 U.S. 576, 583 (1981)).

Plaintiff alleges two potential "enterprises" in the Complaint. First, Plaintiff alleges that the North Korean hackers and all Defendants formed an enterprise-in-fact which had the purpose of "steal[ing] the [Plaintiff's] money and property from its bank account at the New York Fed" and "transport[ing] those stolen funds out of New York City and the United States." Compl. ¶ 373. According to Plaintiff, "[t]he Banking-Related Defendants provided the bridge between" the New York Fed and the Philippines, and "[t]he Casino-Related Defendants provided a route for the money to be further laundered and distributed to the thieves in and possibly outside of the Philippines." *Id.* Alternatively, Plaintiff alleges that the Banking-Related Defendants and Casino-Related Defendants were an enterprise because "the lax anti-money laundering laws and exemption of casinos from those laws in the Philippines gave those defendants the ability to engage in their enterprise and . . . help steal and launder the Bank's funds." *Id.* ¶ 374.

Plaintiff's conclusory allegations with respect to both enterprises fail. Though Plaintiff attempts to allege certain "roles" played by these groups of Defendants, these allegations offer no additional detail as to a separate enterprise. Plaintiff alleges no facts raising the plausible inference that the enterprise was distinct or existed independently from the predicate acts—*i.e.*, the alleged theft and laundering of the funds from the New York Fed in February 2016. Instead, the existence of the alleged enterprises rests solely upon the alleged transfers from Plaintiff's

New York Fed account through the Philippines.  Without the existence of the alleged predicate acts by Defendants, any alleged association-in-fact involving Defendants also disappears.

The Complaint is also devoid of any facts establishing the existence of an enterprise among Defendants and the North Korean hackers or an enterprise among the Banking-Related Defendants and Casino-Related Defendants.  Plaintiff advances no factual allegations that either enterprise was an "ongoing organization, formal or informal," or any "evidence that the various associates" of the alleged enterprises functioned "as a continuing unit." *First Capital Asset Mgmt.,* 385 F.3d at 174.  Nor has Plaintiff provided information regarding a hierarchical structure among the alleged members, or any relationships among the Defendants and the North Koreans.  Nor are there factual allegations detailing communications among the Defendants and the North Korean hackers that would indicate how each Defendant planned and coordinated with one another and the North Korean hackers to carry out the enterprise.  Without more than mere conclusory allegations, Plaintiff cannot allege the existence of an enterprise.

### B. Defendants Did Not Participate in the Enterprise's Management or Operation

Even assuming that an enterprise existed (it did not), Plaintiff has not alleged that each Defendant "participated" in the RICO enterprise.  Under section 1962(c), "one must participate in the operation or management of the enterprise itself." *Reves v. Ernst & Young*, 507 U.S. 170, 185 (1993).  To satisfy this element, a party must exercise control over or direct the enterprise's affairs. *Id.* at 184-85; *Dubai Islamic Bank v. Citibank, N.A.*, 256 F. Supp. 2d 158, 163-64 (S.D.N.Y. 2003) (plaintiff failed to show defendant "direct[ed]" the "operation or management" of the enterprise).

The participation test "is a very difficult test to satisfy." *Dubai Islamic Bank*, 256 F. Supp. 2d at 164.  "Simply alleging that certain entities provide services which are helpful

[or even necessary] to an enterprise without any allegations that those entities exert any control over the enterprise does not sufficiently allege a claim under RICO against those entities." *Conte v. Newsday, Inc.*, 703 F. Supp. 2d 126, 135 (E.D.N.Y. 2010); *Dep't of Econ. Dev. v. Arthur Andersen Co. (U.S.A.)*, 924 F. Supp. 449, 466-67 (S.D.N.Y. 1996) ("[P]rovision of services essential to the operation of the RICO enterprise itself is not the same as participating in the conduct of the affairs of the enterprise.").[14] Nor does "knowingly concealing [an] enterprise's fraudulent activities" constitute participation in the operation or management of a RICO enterprise. *Id.* at 466; *Redtail Leasing, Inc. v. Belleza*, No. 95 Civ. 5191 (JFK), 1997 WL 603496, at *5 (S.D.N.Y. Sept. 30, 1997) ("A defendant does not 'direct' an enterprise's affairs under § 1962(c) merely by engaging in wrongful conduct that assists the enterprise.").

Here, Plaintiff pleads no facts showing, or raising a plausible inference, that any of the Defendants exercised control over or directed the management or operation of the alleged enterprise. The crux of Plaintiff's allegations against Defendants is that each allegedly provided banking or gaming services that allowed the North Korean hackers to launder illicit funds through the Philippines. But such conduct is inadequate to establish participation in a RICO enterprise unless Plaintiff can show that Defendants directed or controlled the enterprise.

There are no factual allegations sufficient to demonstrate direction or control of the alleged enterprise and it would be nonsensical to infer that Defendants did so here. According to Plaintiff, the Defendants "aligned" with the North Korean hackers to steal the funds from the New York Fed. Compl. ¶ 3. But as Plaintiff asserts, the North Korean hackers have previously and successfully hacked other computer systems, and done so at the direction of their

---

[14] *See also Dubai Islamic Bank*, 256 F. Supp. 2d at 164 ("Providing important services to a racketeering enterprise is not the same as directing the affairs of an enterprise"); *Rosner v. Bank of China*, 528 F. Supp. 2d 419, 428-29 (S.D.N.Y. 2007) (finding plaintiff's allegation that defendant provided "indispensable banking services" insufficient to allege an "enterprise").

government (as alleged in the NK Complaint on which Plaintiff relies). NK Compl. ¶¶ 6-7. It is also entirely illogical, and inconsistent with Plaintiff's allegations, to infer that the North Korean hackers, after "quickly transfer[ing] the funds" out of New York and through bank accounts in the Philippines, would then cede control to Chinese nationals to gamble away almost all of the stolen funds for over a month at Philippine casinos before absconding with it to North Korea. Compl. ¶ 4. Against this backdrop, Plaintiff's allegations of a RICO enterprise are wholly without merit.[15]

## III. PLAINTIFF FAILS TO ALLEGE A RICO CONSPIRACY CLAIM UNDER SECTION 1962(D)

Plaintiff argues that it intends to assert (without amending the Complaint) a claim under section 1962(d) for conspiracy to violate RICO. Plaintiff's efforts to add a RICO conspiracy claim must fail for two reasons: (i) Plaintiff fails to allege a substantive RICO violation under section 1962(c); and (ii) Plaintiff alleges no specific facts supporting an inference that each Defendant knowingly entered into an agreement to commit the predicate acts.

### A. Plaintiff Fails to Allege a Substantive Violation Under RICO

Section 1962(d) provides that "[i]t shall be unlawful for any person to conspire to violate any of the [substantive RICO] provisions." 18 U.S.C. § 1962. The Second Circuit holds that the failure to allege any substantive RICO violation is "fatal to [a plaintiff's] RICO conspiracy claim under § 1962(d)." *D. Penguin Bros.*, 587 F. App'x at 669; *Estate of Gottdiener*, 35 F. Supp. 3d at 400 ("[G]iven the conspiracy RICO claim's reliance on factual allegations that are the same

---

[15] As to RCBC, there are no allegations that would suggest that RCBC was exerting control or had "some part in directing" the "operation or management" of the enterprise to be liable. *Reves*, 507 U.S. at 179, 184-85. To the contrary, most of the actions described in the Complaint were taken by junior level officers or employees working from a satellite branch, which is not adequate. *See Dubai Islamic Bank*, 256 F. Supp. 2d at 164 (dismissing RICO claim under sections 1962(c) and (d) when "[a]t most, [Plaintiff] allege[d] that a handful of relatively low-level employees principally at one branch of [Defendant bank] . . . were responsible for the alleged scheme").

as those underlying the substantive RICO claim, the conspiracy RICO claim is likewise fatally

deficient . . . .").  As detailed above, Plaintiff has failed to adequately plead a claim under

section 1962(c)—the only substantive RICO violation alleged here—against any of the

Defendants.  Plaintiff's conspiracy claim also should be dismissed.

### B.     Plaintiff's Conclusory Allegations of Conspiracy Are Insufficient

Even assuming that Plaintiff has sufficiently pleaded a RICO violation (it has not), the

RICO conspiracy claim still fails.  Under section 1962(d), a plaintiff must "provide specific

allegations supporting an inference that each defendant knowingly agreed to participate in a

conspiracy."  *Nasik Breeding & Research Farm Ltd. v. Merck & Co.*, 165 F. Supp. 2d 514,

541 (S.D.N.Y. 2001).  "Bare or conclusory allegations of participation in a conspiracy under

section 1962(d) will not avail on a motion to dismiss."  *Laverpool v. N.Y.C. Transit Auth.*,

760 F. Supp. 1046, 1060 (E.D.N.Y. 1991).  As such, this Court and others consistently dismiss

RICO conspiracy claims where a plaintiff fails to specifically plead an agreement to commit the

requisite predicate acts under RICO.  *Boneta*, 232 F. Supp. 3d at 359-60 (dismissing RICO

conspiracy claim where "Complaint ma[de] no plausible allegation of any agreement among

Defendants or with anyone else"); *Nasik Breeding*, 165 F. Supp. 2d at 541 (dismissing RICO

conspiracy claim where complaint failed to "specifically allege[] any agreement among . . .

defendants to defraud [plaintiff], or how such acts supported a conspiracy").

Plaintiff fails to allege with specificity that a corrupt agreement was made among any of

the Defendants or between any of the Defendants and the North Korean hackers.  The Complaint

is devoid of any specific allegations relating to who, what, where, and how each alleged

co-conspirator, including Bloomberry, RCBC, and the EHL Defendants, agreed with the other

defendants and North Korean hackers to commit the alleged RICO predicate acts, or how they

came together to commit any requisite predicate act. Nor does the Complaint specifically allege how any Defendant knew about any of the other alleged predicate acts. Instead, Plaintiff makes bare and conclusory allegations that North Korean hackers had "to align with co-conspirators," Compl. ¶ 100, that the "criminal enterprise had come together," *id.* ¶ 109, and that "[u]pon information and belief, the Defendants all entered into an agreement to participate in the scheme to break into the [Plaintiff's] systems and launder funds obtained through illicit means." *Id.* ¶ 369. Such conclusory allegations, without any evidence of knowledge, intent, or coordination, is insufficient to plead a RICO conspiracy claim.

## IV. THE COURT SHOULD DECLINE TO EXERCISE SUPPLEMENTAL JURISDICTION OVER PLAINTIFF'S STATE LAW CLAIMS

Because Plaintiff's purported civil RICO claim is implausible, there is no basis for subject matter jurisdiction here and the Court should dismiss the Complaint in its entirety. *See Zohar CDO*, 286 F. Supp. 3d at 651 ("[A] district court . . . cannot exercise supplemental jurisdiction unless there is first a proper basis for original jurisdiction.").

Alternatively, since Plaintiff has failed to sufficiently plead a federal RICO claim—the only claim over which the Court would have original jurisdiction—the Court should dismiss the federal RICO claims and exercise its discretion to dismiss the remaining state law claims. *See* 28 U.S.C. § 1367(c)(3) (District court may decline to exercise jurisdiction where it "has dismissed all claims over which it has original jurisdiction."). Courts in the Second Circuit routinely decline to exercise supplemental jurisdiction under such circumstances. *See Kolari v. N.Y. Presbyterian Hosp.*, 455 F.3d 118, 119 (2d Cir. 2006) (affirming dismissal of state law claims following dismissal of federal claims); *Rasmy v. Marriot Int'l, Inc.*, 343 F. Supp. 3d 354, 372 (S.D.N.Y. 2018) (dismissing state law claims following dismissal of federal law claims, which is "normal practice"); *Weathers v. Millbrook Cent. Sch. Dist.*, 486 F. Supp. 2d 273,

276 (S.D.N.Y. 2007) (same).  Moreover, no "traditional values of judicial economy, convenience, fairness, and comity" weigh in favor of exercising jurisdiction over this proceeding.  *Kolari*, 455 F.3d at 122.  This case is in the early stages of litigation; therefore, very few judicial resources have been invested.  No discovery has been conducted, and no trial or other significant proceedings have occurred.  As such, dismissal "would not amount to a waste of this Court's resources." *Zohar CDO*, 286 F. Supp. 3d at 653.

## <u>CONCLUSION</u>

For the foregoing reasons, Defendants' Joint Motion should be granted, and the Complaint should be dismissed in its entirety.

Dated: New York, New York
      June 14, 2019

Respectfully submitted,

**MILBANK LLP**

/s/ Daniel M. Perry
Daniel M. Perry
55 Hudson Yards
New York, NY 10001-2163
212-530-5512
dperry@milbank.com

Emily A. Glaser (admitted *pro hac vice*)
1850 K St, NW, Suite 1100
Washington, DC 20006

*Counsel for Bloomberry Resorts & Hotels Inc.*

- and -

**SIDLEY AUSTIN LLP**

/s/ Tai-Heng Cheng
Tai-Heng Cheng
Melissa Colón-Bosolet
Ariel Atlas
787 Seventh Avenue
New York, New York 10019

*Counsel for Rizal Commercial Banking Corporation*

- and -

**EBANKS LAW FIRM, PLLC**

/s/ Alberto Ebanks
Alberto Ebanks
20 Vesey Street, Suite 503
New York, New York 10007

*Counsel for Eastern Hawaii Leisure Company, Ltd. and Kam Sin Wong*